The United States Court of Appeals for the Ninth Circuit is now in session. You may be seated. Good afternoon, ladies and gentlemen. This is the time set for re-hearing on Bonk and the case of LULAC v. Wheeler. And we'll hear from the appellants. Thank you, Your Honors. My name is Patty Goldman. I will be presenting argument on behalf of the LULAC petitioners. I will be sharing argument with Ms. Andrea Oster from the New York Attorney General's Office. She will have eight minutes and present argument on behalf of the state interveners. And we hope to try to save three minutes for rebuttal. May it please the Court. This is an extraordinary case in three respects. First, two years ago, EPA denied our petition and left tolerances for chlorpyrifos in place, even though it did not and could not find the pesticide safe. The law requires a safety finding before tolerances can be left in place. EPA violated the law. Second, we filed administrative objections, but EPA is sitting on the objections and perpetuating its violation of the law. And third- I think, Ms. Goldman, you said in your objections twice, page 25 and also 39, that it would take no longer than 60 days for the EPA to rule on your objections. Right? Well, under the statute, EPA must respond as soon as practicable, and the issues are the same legal issues that we've presented to this Court. I understand that. But you represented that it would take no longer than 60 days for EPA to rule on your objections. We believe that would be responsible. All right. That would have been August 2017. Yes. In earlier petitions in this Court, you've been successful in getting rid of mandate or mandamus, rather, to force the EPA to make a decision. Right? Yes. Why didn't you file a petition for mandamus in this case? We did not file one when we filed the case in June of 2017, because at that point we held out the hope that EPA would respond in a timely fashion. Well, you lost that hope after 60 days. Well, we gave them a little longer, but by December several things had happened. This Court had expedited this case, and EPA had sent a letter to Senator Udall and other senators explaining the path forward, which was a lot more review and risk assessments and proposed rules and comment periods, with a final regulatory action not until 2021 or 2022. That's when we added the mandamus request to this case. In your opening brief? Yes. But you didn't file a petition pursuant to Federal rules of appellate practice 21, did you? We did not. Why not? Now, we are not under 21a. This is not a petition for rid of mandamus to a district court. We are in 21c, which the rule there is to follow the procedures to the extent practicable. We did everything required. We asked for the relief. We gave the reasons why and the facts and all of the rationale. The reason we did not is because the case had been expedited. Time is of the essence. If we had filed a petition for rid of mandamus at that time, we would have asked the Court to treat it as related, consolidate, expedite, order a response, and we didn't want to delay. And we thought the Court has within its power to grant other relief in the course of a case and has done that in numerous cases which we cited. Had you filed a petition for rid of mandamus, it would have been directed to the court in July of 2016, correct? The panel retained jurisdiction only up to a point. It no longer retained jurisdiction after July of 2017. All right. Thank you very much. Can I ask this? If we were to think that mandamus relief was the more appropriate route to go here, is it the relief that you requested in your opening brief the same mandamus relief you would be seeking now from us? We actually would ask the Court to be more specific. So in our opening brief, we asked the Court to order EPA to respond to the objections within 60 days. We would actually like the Court to be more specific and order EPA to take one of the actions that is legally required or legally permissible under the statute. So in responding to a petition, EPA has three options. It can issue a final rule revoking the tolerances without even any notice and comment. It can issue a proposed rule, obtain comment, and finalize that rule. Or it can deny the petition. And we know from the safety standard in the statute, EPA cannot deny a petition and leave tolerances in place unless it can make a safety finding. So we would ask the Court to order EPA within 60 days to do one of two things. Either make a safety finding for some or all of the uses of chlorpyrifos, in which case it could deny the petition and leave tolerances in place. Or, if it cannot make a safety finding, grant the objections, grant the petition, and finalize a revocation rule. And why is that appropriate? Why is that an appropriate step for us to take? I was assuming that you were going to stick with the same mandamus relief you requested in your opening brief, which made sense to me, right? Uh-huh. Rule on our objections so that we can then get the regular merits review that the statute affords. Obviously, you're asking for something more aggressive than that, and I guess I'm trying to figure out what's the basis for that. Congress is the one that told EPA that is the authority it has. When Congress overhauled the Federal Food, Drug, and Cosmetic Act in 1996, it did so in two ways. One is substantively. It made it nondiscretionary for EPA to make a safety finding before leaving tolerances in effect and required that EPA revoke tolerances when it cannot make a safety finding. And it defined safety to be an affirmative finding that there is reasonable certainty of no harm to children of all age groups and from all exposures. So that's the safety standard. Procedurally, Congress created a new objections process that applies now, I mean, a petition process. It applies to petitions to revoke tolerances. And EPA can only do one of three things. It's stated in the alternative. So it cannot deny objection or deny a petition, sorry, and have a proposed rule hanging out there. They don't fit because EPA must make the safety finding. So we realize this is being more specific, but it's what Congress told EPA it had to do. The Court would be telling EPA to do one of the things Congress told it it must do in response to a petition. Roberts. You went through two points. What was your third you wanted to make? The third one is that EPA is telling the Court that it can't do anything about this situation. And this Court has one of two avenues. It can find that the exhaustion requirement is not jurisdictional and reach the merits, or it can grant relief under the All Writs Act. And the All Writs Act gives the Court the authority to issue writs in aid of its jurisdiction, and that's future jurisdiction. Or it could do the first and say if you want a mandamus, if you want mandamus relief, file a mandamus petition. We could do that also, correct? Yes, you could. I believe that the Court has the power under the All Writs Act. And the Federal rules of appellate procedure are not jurisdictional. Having looked at a lot of jurisdictional cases, that's pretty clear from Jacoba Castillo in this Court and up in the Supreme Court, excuse me, the Supreme Court cases as well. It is up to this Court to decide whether it will hold us to that requirement. And remember, this is not a petition under Rule 21a. This is not where of course it makes sense to file a petition because the Court is not before this Court, the district court is not, and it's such an unusual procedure to make sure there is notice and everyone has a right to be heard. Everyone's before this Court. There was plenty of notice. But that doesn't necessarily mean there's jurisdiction. Just because everyone is here again. And the third option is simply to move ahead with the mandamus that you seek on appellate review, isn't it? I mean, that's the 60-day option, to consider that as a petition for mandamus and to get an answer to your objections, right? Wouldn't that be in the most ordinary course of what would happen in the mandamus procedure? Yes, and we would ask the Court to treat our request in our opening brief as a request for writ of mandamus. The government has responded. But now you want something more than the 60 days. You want us to delve into the intricacies of whether we think as a legal matter the EPA has boxed in in certain ways and therefore it must do A, B, C, or D. So you're really asking us for an amended petition for mandamus, aren't you? Well, in the circumstance of this case where we have such a clear statutory mandate and EPA is violating it, and sitting on the objections for 22 months now, it's almost 22 months, with none of the steps it said it wanted to take having seen the light of day. And we've been through this in the PANA case, I realize, where there were anti-course petitions for mandamus were granted, extensions were given, ultimatums were made, and then action was taken. So we're back in that situation, of course, with new objections, correct? Yes. Because your petition, I mean, your notice of appeal, as I recall, was filed simultaneously with your objections. Is that right? Yes. Thank you. Ms. Goldman, you pointed out that under Rule 21A, that's a Federal Rules of Appellate Procedure 21A, that's for mandamus to a district court. I happen to have that before me, and it says, the party petitioning for a writ of mandamus or prohibition directed to a court must file a petition with a circuit clerk with proof of service. It sounds to me like you can file, and you have filed, mandamus petitions in circuit courts. Have you not? Right. The petition is filed in the circuit court, but it's directing the writ to the district court in this court's supervisory capacity. That's what 21A is responding to. We are seeking another extraordinary writ under 21C. And for that one, the rules say that we should follow the procedures to the extent of the court. An application for an extraordinary writ other than one provided for Rule 21A must be made by filing a petition with a circuit clerk with proof of service on the respondents. Right.  We filed with this court. But you haven't filed a petition for a writ of mandamus, correct? Correct. All right. We did not. We've asked that the court would treat our request for a writ of mandamus as substantially compliant. You're going under 21C governing other extraordinary writs, where compliance with the rules of 21A are to the extent that it's practicable. Correct? Yes. And we did in the content of our brief, we did raise all of the issues. I mean, this court has the authority to issue a writ of mandamus if it would, if it chooses. And you've got one. In the past, you've gotten two, two or three. We filed many, and we haven't received many. Right. You've done that before. But we still have a jurisdictional issue. So getting back to Judge Watford's question, which kind of now dovetails with Judge McEwen's, an order was issued by a previous panel in this case, July 18th, 2017, that I think reads quite clearly. We've taken the position that until you have a G2C order, a ruling on the objections, we don't have jurisdiction. So I'm very surprised by your answer to Judge Watford's question, if I understood it correctly. It sounds to me like you're now asking for something that we would take additional action before we get a ruling on the objections. I don't know how we do that. So in responding to Judge Watford, I was responding to our request for a writ of mandamus. Yes. I appreciate that. We have a jurisdiction. That's what Judge McEwen's trying to, I think, get you to focus on. We have a jurisdictional issue. Yes. And we've ruled on it earlier in this July 18th, 2017 order, right? There was a statement in that order. It wasn't a ruling. It was a statement about the way the procedures ordinarily work. And what's truly extraordinary about this body of law, and I've been amazed as I've been learning more and more about it, is jurisdiction is not dictated by whether there is an exhaustion requirement that is mandatory under the words of a statute. The language can be emphatic. It can be very mandatory. And that is not enough of a congressional intent that the requirement be jurisdictional. I'm trying to get a focus on the order that's previously been entered in this case and tell me why it's not the law of the case. It seems like we've answered and told you that we need to have a G2C order before we have jurisdiction. Am I missing something? Well, the panel was not applying the jurisdictional law. Nobody had briefed us. This is a different case, isn't it? It's a different case. The EPA denied the petition. Isn't that right? Yes. And the problem is we don't have a G2C ruling. Is that right? Yes. You don't have an order on your objections, right? We do not. And ruling. We've been talking a lot about mandamus, but is it still your position that we could get to the merits, even though there's been no ruling on the objections? Yes. And the reason, even though the Court did say we should go get a G2C order, it was not making a jurisdictional ruling. And this Court and the Supreme Court have cautioned courts not to treat statements about exhaustion or other procedural requirements as jurisdictional just because the Court says this is what the statute requires. The Supreme Court has been very clear for about a dozen years now that more is required, a clear statement. And there are numerous examples of requirements that are no party shall file a case until administrative procedures are exhausted, no case shall be brought until there has been exhaustion, where this Court has found them not jurisdictional. Same with the Supreme Court. More is required. Something that goes to the power of the court instead of the obligations of the party. Something that says the court shall have no power. No Federal court shall hear. So there are examples where this Court has used that kind of jurisdiction-stripping language. Kennedy. Well, how about this language? Any issue as to which review is or was obtainable, and, of course, you could get obtained, you could get a review of the objections, right, under this subsection shall not be the subject of judicial review under any other provision of law. And that is an interesting provision because the opposite, the converse is, if review of an issue is not obtainable under the food law provisions, it is available under another provision of law. And so Congress was saying there, look at whether the issue of the issue. But it is obtainable here. All you have to do is to get a ruling on the objections and to get, as Judge Kristen says, a G2C order. Well, we would submit it's not obtainable under the circumstances here. And I'd like to direct the Court to the Prisoner Litigation Reform Act, which this Court has held is not jurisdictional, even though it says that no review shall be had until all administrative remedies as are available are exhausted. And this Court in Andre v. Marshall held that if a prison official is sitting on the grievances and not processing them, that makes the review not, the administrative remedy not available. And in Payne, this Court en banc said that exhaustion isn't a check-the-box exercise. It's not an exact science. You have to look and see under the circumstances whether exhaustion has been had. So is review of this issue obtainable? That is something Congress wanted the Court to figure out. And if not, then judicial review can happen under another provision of law. I thought that what we did in all those previous mandamus cases is figure out whether relief was obtainable and telling the EPA that they had, they couldn't sit on it forever. And that, that's why it's a mandamus and that's why it's not an appeal of a G2C order. I mean, there's two different things. And it seems like you keep looping back to say that relief is not obtainable. But it also seems odd to me, and maybe you can explain this, why you would say that on the very same day that you filed your objections, so there was no time to play out the story. Now, it might be the same. The story may have the same ending. I don't know. But there was no time for the objection period even to play out. We had a 60-day deadline to file the petition for review, and we didn't want to have another reason why EPA would say we couldn't get review. So that's why we filed them both on the same day. But at this point, if we were to enter a mandamus and require the agency to act on the objections, say, by July, which I think it was indicated that they could do that by July, that would have been two years for the agency to act. And it would preserve, it seems to me, the very important line where rather than trying to do the agency's job, we instead enter mandamus requiring the agency to do the agency's job. I appreciate that you're frustrated that there hasn't been a ruling on the objections, but I'm, just so you know, I'm waiting for the answer about why we wouldn't require them to act, and failing that, in other words, failing a G2C order, why we would have jurisdiction. And we would like the Court to order EPA to act within 60 days. If the Court is not comfortable directing EPA to do what the statute requires, but just to answer the objections, it's our hope that they will follow the law. We'd ask the Court to retain jurisdiction and order supplemental briefing within 30 days so that the case can move on. I'd like to respond to Judge McKeown's question about the former mandamus proceedings. Obviously, there was no G2C order there. So we were not seeking review under the letter of the fool. No, it was a mandamus petition. And I understand that's distinct from your appeal here. And under H5. But that's the point, of course, is that with the language that Judge Bale read, which really, at least in my tentative view, circumscribes our jurisdiction, some people may read it differently, some more expansively, but that you have to split the two because the mandamus is separate and not cabined by that same jurisdictional restriction. Do you agree with that? Yes. In fact, H5 says if review of the issue is not obtainable, review can be had under another provision of law. The All Writs Act is another provision of law, which this Court does not have. And I guess then what the rub is in how you define non-obtainable. And that's a pretty subjective term that would be up to this Court to interpret it in furtherance of Congress's intent. And it's inconceivable that Congress intended EPA to do what it's doing here and not have it subject to review when the entire purpose of the 1996 law was to take discretion away from EPA. Would you like to reserve? I would like to give my colleague an opportunity. Good afternoon, Your Honors, and may it please the Court. Andrea Ossor for Intervenor States and District of Columbia. We took the very unusual step of intervening in this case and also opposing an administrative exhaustion defense, not something we do lightly since we rely on that defense in our practices frequently because of the very extraordinary nature of this case. The intervenors rely on EPA to regulate food tolerances in accordance with this statute. And the statute gives EPA two choices, as my colleague has said. Maintain food tolerances when EPA can make the requisite safety finding or else revoke or modify them. And EPA has done neither, thereby threatening the health of our residents and especially our citizens. I'd like to start with that jurisdictional point, which seems to be still troubling some of the judges. There are four factors that the courts routinely look at that are in play here and that tell us that this statute is not, that this administrative exhaustion requirement is not a jurisdictional prerequisite to suit. Even if it's not a jurisdictional prerequisite, where does the jurisdiction come from? What statute? If that — if it's not restricting jurisdiction, we still need some grant of jurisdiction, don't we? And where is that? I'm not sure I understand the difference, Your Honor. If it's an administrative exhaustion requirement that can be deemed forfeited, then judicial review is proper under H-1 of the food law. But in your briefs you said that H-1 is not a jurisdictional statute. That's — It doesn't grant jurisdiction. It allows a litigant to obtain judicial review, which must be had initially in the court of appeals. It tells a litigant what to do as opposed to imposing a restriction on the court. And that is certainly one of the factors that courts routinely look at, whether a provision is directed to parties or whether it's a restriction on the power of the court. And that H-1 says a litigant can obtain judicial review. It does use a shorthand. It refers to a G2C order instead of writing out something longer, like a decision on an administrative petition after administrative objections have been completed. Indeed, it limits the jurisdictional review to subsection F1C or G2C or E1C. As I said, it's using — You're only dealing here with a G2C, right? Yes. But what I'm explaining is that that reference to G2C is simply the administrative exhaustion requirement reference there. Because — I'm sorry. But getting back to Judge Friedland's question — Yes. Normally, when our briefs, at the beginning of the briefs, it says the court has jurisdiction under 28 U.S.C. 1291. Yes. Okay. So what statute should we look at here to say why we have jurisdiction? Well, we have a Federal question, and we have judicial — exclusive judicial review in the court of appeals because — What statute? Is there a statute we can look to and say 28 U.S.C. 1291 or some other statute would say there we have jurisdiction? Well, 1331 is Federal question jurisdiction, but this statute makes review exclusive in the court of appeals for certain types of orders. And here we have an administrative petition that was filed. It was denied. And the only step that isn't completed is a decision by EPA on those objections. And what's critical here is — So your argument is that the jurisdiction is really over the denial of the petition, right? And so now the question is whether the G2C order, that final step — Over the 20 — — is an exhaustion requirement that can be waived. That's exactly correct. And what's critical here is that the step that we're waiting for, the decision by EPA on objections, that's outside our control, right? We as litigants, we did everything we were supposed to do. We filed timely objections, and now we're waiting. The same — Did you file a petition for mandamus? We did not, Your Honor. We intervened. We have before. We intervened in the petition. We didn't file any — we didn't — all we did as interveners, we intervened in this petition. But I think you can and should view the briefs as having amended that petition to seek mandamus relief. The principal briefs all ask for that relief, and this Court certainly has the power, as my colleague has said, to treat it that way. But I just wanted to finish this point about a fact that's outside of our control. That was also the case in the Supreme Court case of Gonzalez v. Thaler, which dealt with the contents of a certificate of appealability for habeas review. And if I could quote from the decision in that case, it would be, quote, counterintuitive to render a panel of court of appeals judges powerless to act on appeals because, in that case, a single district court judge, in this case an administrative agency, quote, fails to do what is required to obtain judicial review. That's a very important factor for purposes of deciding whether this Court has jurisdiction to review the 2017 order. If we were to treat your appeal, the appeal as this proceeding as a mandamus, do we have to decide the jurisdictional issues that you've just been discussing? I don't think you do, Your Honor. In preservation of your jurisdiction, you could grant mandamus relief, directing EPA to decide the objections, to grant them, and proceed with rulemaking. You could do that. But what we're saying is you also can find that you have jurisdiction over this order because the administrative exhaustion defense has been forfeited here. I was going to – yes. Counsel, I just have a – there was nothing that required you to object, right? It's not a requirement that you file objections before you ask for review in the court of appeals, Your Honor. No. We certainly had a final decision with the 2017 order. Then why didn't you just withdraw your objections instead of waiting forever and just ask for us to review the order? Well, I think you – Because there's no requirement. You don't have to really wait for them to – It's still a statutory requirement, administrative exhaustion.  Under the statute, you're required to exhaust them. Okay. What section? This is subsection G. Okay. I just was – that was my first question. Were you required to file these objections? In order to obtain judicial review, right? Normally. In order to obtain judicial review under H-1. Well, under most administrative law, you're required to object first before the agency. Yes. But I'm just asking you, were you – under this Food Act, were you required to file those objections? There is a statutory requirement to exhaust the objection process in order to obtain judicial review. We're simply saying it's not a jurisdictional prerequisite to suit. It's simply a statutory requirement, and it should properly be treated as forfeited here. It's also what the July 18, 2017 order directed, right? Yes, in the In Re Pana case, because at that point, arguably it was premature, and the court can say, you have to exhaust your remedies. But the parties actually anticipated that this delay would happen, because all we've seen in this case is a decade of delays and missed deadlines. So it's no surprise to us, but yes, at the time of that decision by the panel, arguably the request for mandamus at that point was premature, which also was the case when this petition was initially filed. But as I said, it was effectively amended by the principal briefs. I don't mean to split hairs. You keep saying arguably, and that is what the court ruled, right? That's what the July 18 order said. Yes, but it didn't clearly make a jurisdictional finding. It dismissed the case. Okay. I'm just looking at my list of factors. I don't think I got to all four of them. I think Judge McKeon had a question. No, that's fine. I will give you your last moment for yourself. Well, history. I'll end with history. Historically, administrative requirements are almost never deemed jurisdictional. And I'll just say this. Bottom line, there is no clear statement that Congress intended to permit EPA by unilaterally withholding a decision on objections to defeat judicial review and thereby violate the very command of this statute that EPA either affirmatively find existing tolerances safe to a reasonable degree of certainty or revoke them. Thank you, Counsel. Thank you, Your Honor. May it please the Court. My name is Jonathan Breitbill from the Department of Justice. With me here today is my colleague, Phil Dupre, also from the Department of Justice. I'd like to start with a point that I believe that Judge Friedland and Judge Owens were beginning to explore, and it relates to the jurisdictional prerequisite here, and that this is a far easier case of statutory interpretation than what it has been presented to be to date. It actually does not require this Court to weed through the nuances of the various Supreme Court precedent that they've wrestled with on whether administrative exhaustion requirements are jurisdictional or not in cases like Henderson v. Shinseki and Sebelius v. Auburn Medical Center. Instead, as Judge Fernandez wrote in his dissent, in the FFDCA, quote, Congress was very careful and very specific about the class of cases, the limited kinds of orders, over which it gived the Court of Appeals direct review. And that last observation by Judge Fernandez is the key, what Congress wished to give the Court of Appeals direct review of. The panel majority below first and most fundamentally  Is it your view that Congress intended for the government to be able to deprive the court of jurisdiction by just sitting on the objections and not respond at all? I mean, what effect does responding as soon as practical mean when you look at the statute as a whole? It's our belief that Congress intended to delegate to EPA, an expert agency with scientific experts, a tremendous amount of discretion to carefully review records, including new science that is submitted on the edge of science before making a determination. But I want to get back to the issue, which is the difference. But that's a very important issue. The question Judge Wynn is asking is a deeply concerning question, and the Court has expressed its concern about this point repeatedly. So could you back up and take another run at that? Is there no limit to this? Of course there's a limit. Is that really your answer? What is the limit? The limit occurs at the point at which a mandamus petition is filed that sets forth the law and the facts that support that the agency has delayed to the point that a mandamus order requiring a specific action to be taken by a date is necessary. So we have case law that says we have the power to construe this petition as one for a man seeking mandamus relief, even if the parties haven't specifically requested it. So why shouldn't we do that and give you a time certain to respond to the objections? So, Your Honor, last year, about this time, or June, when the argument occurred for the panel, my colleague, Mr. Dupre, represented on behalf of EPA that it would take about a year to complete the objections process. We're now nine months beyond that. Now, in response to the ---- So how much more time do you need? You've had 10 years or more to look at this. We've changed administration. Apparently, we've changed science. How long do you need? We haven't changed science, Your Honor, and I would be happy to speak to that at some point if you would like. But in terms of the additional time ---- Well, how long do you need? 90 days is what the EPA has represented that it would ---- it will take if a decision is handled down, handed down by this Court that vacates the panel decision. 90 days from when?  I'm over here.  90 days from when? Today? No. 90 days from the date upon which the panel decision below is vacated and the objections process that currently ---- Wait, wait, wait. Why do you have to wait until some order? Like, are you ---- is the EPA ready to issue something 90 days from today if we were to issue an order? No, it's not. It's not issue ---- ready to issue 90 days from today, Your Honor, and I'm happy to explain why that's the case. So Congress set forth a specific chain of events and different decisions. There's an initial decision on the petition, and then once the objections are received, and it's important to note that the objections is a process that is more than just the Petitioners in this case. It provides for any interested party to submit additional argument, evidence, and other things that will also be considered in the context of that objections process before it reaches a final decision. So it is actually a more expansive process in terms of what Congress is ---- 90 days is from the point at which the objections process that currently is underway is no longer moot. Effectively, by ordering ---- It's no longer moot? Exactly. Let me explain that to you, Your Honor. Effectively, by the court issuing an order to EPA that required it to grant the petition to revoke, okay, that made the existing objections process, which was taking additional information and the objections as it relates to the denial, effectively is a practical matter moot. So at that point, that practice was suspended, at least as it related to the particular objections process there. So what you're saying is last July before the three-judge panel, government counsel represented that it would be ready to act on the objections within a year. That's right. So that would then be coming right up. But you're saying that after the panel issued its rulings, then the government decided not to proceed on parallel tracks and just stopped preparing the response to the objections? Because that ruling ordered ---- Wait, wait. Excuse me. Was that a yes? Is that a yes? Is that a yes question? It stopped because that ruling effectively mooted that objections process, because that objections process related to a denial of the petition that underwent. Counsel, I am mentally calculating my retirement date here, wondering when we're going to get a ruling. I'm not trying to be flip, but honestly, I'm not sure that you answered Judge Wynn's very important question. So ---- Did they stop after the representation was made to the three-judge panel? They stopped after an order came down from the panel that effectively mooted that administrative process. But then you saw it on Bonk Review. That's why we're here. And we are here. So I don't understand. Didn't you start again? So they have begun to ramp up the objections process review. And so they will be in a position to issue a final decision. There should it be 90 days from when we grant it on Bonk Review? It will be 90 days from the point at which there is an order from this Court that effectively recognizes that that administrative process is no longer moot and can and should continue. It's not moot. When you say moot, it makes me think of legal mootness. But what you're saying is that because there was a decision that was issued, EPA as an agency decided not to do anything in preparation for responding to the objections. Did I understand your position correctly? No. Respectfully, Your Honor, it was mooted because the objections process is tied to the decision. And the decision that was initially offered by EPA was a denial of the petition. The panel ordered EPA to issue a revocation, which is a change in what the D4 outcome would be.  And so what you're asking now is to allow EPA additional time in order to complete its response to the objections. I don't believe it will end up being much additional time, Your Honor. So in terms of the timing, again, what are we talking about? Ninety days from an order from the en banc panel that vacates the panel decision below and returns to jurisdiction. It's already withdrawn. It's already withdrawn. That happened. That happened. So in other words, just to be clear, if there were certain expeditious action and such an order came out tomorrow, then EPA would need 90 days from that date to wrap up this response to the objection and enter, presumably, a G2C order or whatever final order. Is that my correct in that? Yes, Your Honor. There are 90 days from a decision from this Court that would recognize that there was not jurisdiction, and, therefore, the existing administrative process can and should continue. All right. Let me just ask something. I just want you to clarify something, because when you, again, your use of the word moot was a little confusing. You don't mean that new objections have to be filed. You just mean that you stopped work because you had an adverse ruling, right? You're not saying those were mooted and now we need them to refile objections. So if there's a recognition that there was not jurisdiction and the administrative process continues, that process will continue. It does not have to restart at that point. Because that underlying decision, if it is allowed to go forward undisturbed, i.e., the initial denial of the petition, then the objections process will continue and they will complete that within 90 days. Why would we need to rule on jurisdiction? If we construe the petition as seeking mandamus relief and direct and seeking you to issue an order within 60 or 90 days, then we wouldn't have to reach the question of jurisdiction at all, would we? I mean, you're asking us to reach a jurisdictional question that we may not have to reach. Well, Your Honor, I — I mean, the panel decision is not precedential by order. It's essentially been vacated. I don't understand your problem. Well, Your Honor, if the — if the decision is effectively vacated and — Well, it is. By the — by granting on bonk review, that happened already. It seems like maybe you missed that procedurally. But when we granted this case, that makes the panel opinion no longer in effect. Well, respectfully, Your Honor, it didn't actually say vacated in the order to grant a rehearing, so we were not, frankly, clear as to whether the underlying panel decision was, in fact, vacated, because that word did not appear in the order. But if that is — if that is the position that that's vacated and — Well, it's non-precedential. It's non-precedential, Your Honor. So if you — if you do not decide the jurisdictional question, Your Honor, which, again, I'd like to come back to because it is a far simpler jurisdictional question and a question of statutory interpretation than it's been made out to be. But if instead you construe it as a petition for mandamus, Your Honor, presumably you would not have to reach that question. Right. And then you said you can answer the objections in 90 days. Your Honor, we don't actually believe that this is a properly submitted request for mandamus. There was not — That wasn't my question. I just asked how long. Yeah. And you said 90 days, correct? Well, if there was an order for mandamus, Your Honor, respectfully, I would — But within — Without waiver of the opposition to there being an order of mandamus, I would ask for, say, more like 100 days to give them a little elbow room. But they are prepared to do it. A minute ago — wait, wait, wait. It's a minute ago. It was 90 days to me. And I don't know if each moment goes longer, the days get longer. But — and you started off saying 90 days. Now, I understand you may object to the mandamus procedure, and I totally understand your jurisdictional argument on its own words. But I just wanted to make sure I understood. I said if there were an order tomorrow, I understood your answer to be that 90 days from then, you would be able to issue the appropriate order. EPA has authorized me to represent that they will be prepared to issue a final decision on the objections within 90 days of an order from this Court recognizing that that process can and should continue, the administrative process, the objections on the denial of the petition that was granted in March of 2017. Are you also — are you also authorized to waive any response to the petition for writ of mandamus? No, I'm not authorized to waive that, Your Honor. We would like to respond if there is ultimately a separate writ of mandamus that's filed. But if we treat the petition for — I mean, the request for mandamus in the opening brief as a petition for writ of mandamus, you want some time to make an opposition to that by supplemental briefing? Your Honor, respectfully, I understand what you're suggesting. But in all frankness, we did respond in the context of our opposition to the alternative ---- But they raised it in the opening brief, and so whatever arguments you had, you laid them out in the opposition brief. We did, Your Honor. We did oppose in the context of our opposition brief the alternative request for a writ of mandamus. But note here that the writ of mandamus that's now being requested is one that there hasn't actually been a 21C submission for, this new form of extraordinary relief. Going back to Judge Watford's question. Yes. Maybe you can respond. I was going to ask the question I wanted to ask. You heard a slightly different form of mandamus relief than I had been contemplating when I came in here be put on the table. What's your response to that?  Indeed, it is, Your Honor. And it's a new form of mandamus relief that we haven't had a chance to respond to, to which there hasn't even arguably at this point been a 21C submission, because this is the first that anyone in this courtroom has heard of it. Well, counsel, nothing stops them, whatever we do, from filing that petition under 21C, right? They can file a petition for writ of mandamus at this point, yes, sir. But I'm understanding that if we construe the ---- limit the request for mandamus relief to the blue brief request, that the government's position is you've responded to that. I think that's what you just told Judge Baya. We have responded. I think you should quit while I'm ahead, because I got the answer that I understood. But is that right? Yes, Your Honor. We responded. Okay. I appreciate that. Thank you for your candor. Okay. So with respect to the jurisdictional question, I'd like to explain why this is a far easier question than it has been presented. And that's because ---- Before you move back to jurisdiction, can I ask you to respond to the argument that was raised with regard to 21A, that that is directed to proceedings in the trial court, and that the relief here that they've ---- that they're seeking and sought in the opening brief was actually under 21C? Your Honor, respectfully, whether it was 21C or 21A, they should have complied with those requirements and given everyone in the proceeding, including the judges and the Respondents, a fair opportunity to note specific facts upon which they were relying. Instead, we got a ---- But do you agree with the position that 21A is really directed to proceedings in the trial court? 21A or 21C ---- Can I read it as well? 21A, 21C, the bottom line, Your Honor, is that they did not submit an application that actually, in our view, clearly set forth all those factors. No, I understand that argument. I'm trying to get you to respond to whether you agree with them that 21A is the procedural vehicle directed towards the trial court, and 21C is what they were proceeding under when they asked for mandamus relief in the opening brief. So I'm not ---- I'm not prepared to respond to that, Your Honor, because that's not an argument that we've heard before today from them, and we could brief that if you would like it. But as to the jurisdictional question as to why this is a far easier question is because there is no original grant of jurisdiction to this court of appeals to consider a 346-A-D-4 denial order. The Congress was very specific in what petitions for review it would be permit ---- it would permit this court of appeals to hear as a matter of original jurisdiction. It carefully enumerated those in the statute. And in the absence of that, under 1291, 1292, this is a court of appeals. So to the extent that there would be a challenge to a 346-A-D-4 petition denial, that would have to be heard in the district court, but under the arguments that were considered by the Second Circuit in NRDC v. Johnson in 2006, jurisdiction is also foreclosed in the context of a district court challenge. And that's the point at which the analysis of the various factors would come into play. But here, this Court doesn't even get to that issue of those various factors because there's no original grant of jurisdiction to the court of appeals to hear a petition for review of a 346-A-D-4 denial. And the Supreme Court, in the case of National Association of Manufacturers v. Department of Defense, just last spring, set forth the relevant analysis on this in the context of a petition for review of a Sixth Circuit decision to review what was called the clean or is called the clean water rule. And that considered whether there was jurisdiction to review there. And when reversing that court's holding, the Supreme Court reasoned unanimously, quote, Section 1369b1 does not authorize immediate circuit court review of all national rules under the Act. It does permit Federal appellate courts to review directly certain effluent and other limitations in individual permit decisions, C.E.G. 1369b1e and f. It is true that Congress could have funneled all challenges to national rules to the courts of appeal, but it chose a different tack here. It carefully enumerated the seven categories of EPA action for which it wanted immediate circuit court review and relegated the rest to the jurisdiction of the Federal district courts. Applying the reasoning of a unanimous Supreme Court last spring to the FFDCA leads to a similarly straightforward result here. As Judge Fernandes wrote in his dissent, Congress did not give the court of appeals original jurisdiction to review these denials. So -- It was a dissent. It was indeed, Your Honor, yes. And a very persuasive dissent in our view, Your Honor. Judge Fernandes is often very persuasive. So, but I want to move on to what the Petitioners are calling the stricter recent Supreme Court precedent regarding the interpretation of the jurisdictional scope of exhaustion, okay? And to be clear, this is not an exhaustion case. There are points at which all the parties have referred to this as a structure where there is administrative exhaustion, but that isn't the structure that Congress has created here, because as the Supreme Court has recognized in Darby v. Sinieros, quote, the judicial doctrine of exhaustion of administrative remedies is conceptually different from the doctrine of finality. The finality requirement is concerned with whether the initial decisionmaker has arrived at a definitive position on the issue that inflicts actual concrete injury. An exhaustion requirement generally refers to administrative and judicial procedures by which an injured party may seek review of an adverse decision and obtain a remedy if the decision is found to be unlawful or otherwise inappropriate. In the FFDCA, Congress did not create a scheme of administrative exhaustion from an initial decisionmaker to a later review by higher administrative authority. The administrator in this congressional scheme is both the initial decisionmaker as to the petition process in 346a.d.4 and the final decisionmaker after the objections process in 346a.g.2. So the two conditions that must be satisfied for final agency action, first, the action must mark the consummation of the agency's case, Your Honor, because the administrator has issued an initial denial, and the administrator will receive the additional evidence, the additional argument that comes in through the objections process, and then the administrator will issue what Congress itself calls a, quote, final decision in the statute in 346a.g.c. So this is not an exhaustion case at all. This is a case of lack of final agency action, which means, once again, you don't even get into the box of considering whether there is exhaustion and whether the exhaustion is jurisdictionally dispositive or can be waived. And instead of a presumption of review, which is what they cited as, you know, all agency action is subject to agency review, they quote to Bowen v. Michigan Academy for that, because this is a case of non-final agency action. The correct Supreme Court maximum comes from Bell v. New Jersey 461 U.S. 773, which is, quote, the strong presumption is that judicial review will be available only when action becomes final, citing MPC v. Metropolitan Edison, Wright & Miller, and other authorities. So even if this were an exhaustion case, and it is not an exhaustion case, the Petitioners are also incorrect in saying that the remaining questions to be addressed are purely legal in nature, okay? This Court has also recognized that artifice by litigants before in Diaz v. United Agricultural Employees when it wrote, quote, to be sure many employee claims may implicate statutory requirements, but that prospect does not give a claimant the license to attach a statutory violation sticker to his or her claim and then use that label as an asserted justification to avoid a congressional review scheme. Here, too, EPA did not deny the petition on purely legal grounds. It also cited the, quote, considerable areas of uncertainty with regard to what the epidemiologic data show and deep disagreement over how those data are to be considered. Excerpts of Record 034. And, in fact, can I ask you, I guess I'm not that familiar with the statutory scheme, but I thought the agency had to make an affirmative finding essentially of safety and that it hasn't done that and it seems like it can't do that here. So what am I missing in terms of why this is more complicated than that? Well, Your Honor, in terms of the can't, you should understand that the administrative process here is one where EPA has never come to any actual final findings about whether or not chlorpyrifos is safe or not safe. Right. But the statute says in that scenario you must revoke the tolerances. At the point at which there's a final agency action, the current state of the law is that there is a final finding by EPA that was issued in 2007 which found that chlorpyrifos is safe. And so what we're dealing with now is a petition to reconsider that finding and to modify or to revoke those tolerances. And it's important to note that while EPA has on occasion now proposed to modify or revoke those tolerances, at every point at which it's done so, including, first of all, in November of 2015, EPA made clear that it Why isn't it effectively final when EPA in 2015 indicated that it would or it intends to revoke the tolerances because it's not able to make a prerequisite safety finding? Because EPA takes notice and comment, and any decision that it makes ultimately is going to be subject to judicial review from one side or the other. And so in the instance of the November 2015 proposal, EPA was very clear that that was not an ordinary proposal in which it was making that proposal based on having conducted and finished a comprehensive assessment of data and comments that it had previously received on its 2014 risk assessment. In fact, EPA's Federal Register notice was clear that EPA was merely issuing that proposed rule at the time, quote, in light of the U.S. Court of Appeals order compelling EPA to take this action by October 31, 2015. But EPA has not addressed these prior comments in this proposed rule. Excerpts of Record 1134. It went on to further explain, quote, as a result of this order, EPA is issuing this proposed rule in advance of completing its refined drinking water assessment. In addition, EPA has had insufficient time to address comments received on the revised human health risk assessment. As a result, EPA may update this action with new or modified analyses as EPA completes additional work after this proposal. Excerpt of Record 1136. It then put out another revised risk assessment in February of 2016, and it took that to its independent panel of scientific advisors, the FIFRA Scientific Advisory Panel. This panel of 17 Ph.D. scientists, all of them from independent universities or government health agencies, and none a representative or employee of an industry group or company, issued a report after that meeting. The overall summary of that report stated of EPA's proposal, this is in the Record Excerpts of Record 1191 to 1192, the majority of the panel did not agree with the agency's use of the results from a single longitudinal study to make a decision based on the use of core blood measures of chlorpyrifos as a point of departure for risk assessment. The panel agrees with the agency that there are complex unknown variables that are recognized as uncertainties. Because many uncertainties cannot be clarified, the majority of the panel does not have confidence that the Columbia Center for Children's Environmental Health core blood data on chlorpyrifos concentrations can accurately be used in quantitative risk assessment to determine a point of departure. Some panel members thought the quality of the CCEH data is hard to assess when raw analytical data have not been made available and the study has not been reproduced. Sotomayor, we have read the various papers. I have a procedural question for you. In the objections that were made, was there a request for a hearing? There was not a request for a hearing. So in other words, that's not another procedural hurdle that anyone has to overcome at this point. There was not a request for a hearing, but there were submissions of various evidence, declarations, and other evidence, not only by the Petitioners, but also by Respondents who reviewed the objections and then submitted additional factual evidence. So in other words, it's the objections plus all the other submitted materials that the EPA would now factor into its decision in 90 days from now or from whenever, if that were the procedure that we adopted? Yes, Your Honor. No other procedural hurdles to be overcome that we don't know about? Yes, Your Honor. The EPA will take the record as it relates to the objections and now act on those objections. And it also bears emphasis here, too, that these objections that were put forth are more than just legal arguments. They are the objections also contained questions and raised arguments about the factual findings. Their objections are in the record at ER 121. And under the where the objections start on ER 149, Roman I, EPA's denial of the 2007 petition is illegal because EPA cannot maintain tolerances in the face of its findings that chlorpyrifos is unsafe. There are no such findings by the EPA at this point that are final. There were proposals. So these are not pure legal questions that can simply be. Well, you're saying that they have to factor in the science experience and all the other things, they meaning the EPA. That's right. And what my only question was, there aren't going to be any surprises in the next 90 days that would change anything other than the EPA would make a final decision, correct? Your Honor, EPA has authorized me to say to you in good faith that it is fully their intent to act within 90 days of a decision. Well, Counsel, wait a second. Whenever I was a prosecutor for a long time, and whenever you hear, like, it is the intent to do something, that's not the same as we're going to do it. I think that's a lot of the questions for the panel is, is the answer yes or no, not we hope to, we intend to, we mean to. Yes or no, will it be done in 90 days? Yes or no? And I understand the desire. The answer to that question is yes, but barring some extraordinary circumstances, Your Honor, that I can't sit here and forecast that it's possible that we could at some point, right, I can't foreclose in all eventualities, but in good faith, the answer to that question is yes, that is their intent, that is what they are intending to do in 90 days. There's no gotcha alternative plan to my knowledge to not do that. They authorized you as their agent to make that representation to us. Yes. Yes, I was authorized to make that representation to you. And there's no other sort of hidden thing. I mean, it is a complicated statute, so I just wanted to make sure we were understanding the statute correctly, and I think that you fairly answered that question. I appreciate it. Yes, Your Honor. There is no intended hidden thing. Are there any other? Along those lines, are there any other authorizations, authorized statements that EPA has authorized you to make that you haven't made? Not that I can think of, Your Honor, but thank you very much. Thank you for your question. You are satisfied that the petition for mandamus in the opening brief has been sufficiently answered by EPA so that we may consider that as a petition for mandamus now? Yes, Your Honor, you may consider that, although we do not concede or consent that that relief should be granted. Thank you, counsel. Thank you, Your Honor. We'll hear rebuttal. You have almost all of your three minutes left. Thank you. If the petition had been granted two years ago, and EPA had finalized the revocation rule, Clerk Pirofos would have been out of our food within six months by October of 2017. A decision on the objections and a revocation rule are one and the same. And now we're at, I mean, I'm sorry, a decision on the petition and a revocation rule were one and the same. EPA had drafted a revocation rule. Now we're at the objection stage, and I too am concerned about what will come out in a decision on the objections. I am pleased to hear that we're not going to see some hearing being held on the science. We have risk assessments that were finalized in 2014, superseded the risk assessments that led to the 2006 decision, and this Court stated in the PANA decision, we're not in 2006 anymore. Now EPA has found this pesticide unsafe the only way it does, which is through risk assessments. And that's what the statute requires it to do. And it updated that risk assessment, not with the one that Mr. Brightville was telling you, but with another one that did what the scientific advisory panel ordered it to do or directed it to do. And it found Clerk Pirofos unsafe every way people are exposed to it. For children one to two years old, they're exposed to 140 times safe levels. We have the findings. Now under the statute, the final decision on objections is an order stating the action taken upon each such objection and setting forth any revision to the regulation or prior order, the order here being the 2017 order denying our petition. So the Court should order EPA to act on the objections by a date certain. If it's 90 days, we'll take it. We thought it should be done a lot sooner. And it should be the decision on the petition as well, because that's what's supposed to supersede the decision on the petition. And it should be taking whatever action must be taken. If this pesticide is unsafe, it's got to go. And EPA has to finalize its revocation rule. If EPA persists in finding that it's not going to take action, we ask the Court to retain jurisdiction. We'll file another petition. Are you amending your mandamus request in your rebuttal? I thought I was clear in my opening that I was asking for the Court to be very specific in the mandamus request. That sounds like you're making it more specific in your rebuttal as to what you want us to order. I actually thought I was being less specific, because in the prior one, I was saying actually finalize the revocation rule. I mean, the statute is what is dictating what EPA should do. We're just not very hopeful that EPA will do what the statute requires, given what it's done so far. So we would ask the Court to be clear that this time it should take the action that is legally required under the statute. And if it does not revoke the tolerances, we ask the Court to retain jurisdiction, file another petition for review. We'd ask that it still be expedited, and we could file supplemental briefs in 30 days. Thank you, Counsel. Thank you both for your arguments this afternoon. The case just argued will be submitted for decision. We'll be in recess.
judges: Thomas, McKeown, Wardlaw, Paez, Bea, Christen, Nguyen, Watford, Owens, Friedland, Bennett